IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| ANGELA (Thompson) JONES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV 118-010 |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Angela (Thompson) Jones appeals the decision of the Deputy Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.     BACKGROUND**

Plaintiff protectively applied for DIB and SSI in September 2013, alleging a disability onset date of July 12, 2013. Tr. ("R."), pp. 19, 809-16. Plaintiff was forty-five years old at her alleged disability onset date and was forty-eight years old when the Administrative Law Judge

("ALJ") issued the decision currently under consideration. R. 19, 32, 811. Plaintiff applied for disability benefits based on a combination of alleged impairments, including degenerative disc disease, failed back surgery, depression, anxiety, bipolar disorder, borderline personality disorder, radiculopathy, arthritis, low thyroid, short term memory loss, left carpal tunnel syndrome, left shoulder degenerative joint disease and labral tear, post-traumatic stress disorder, and obesity. R. 21, 852. Plaintiff completed high school, and prior to her alleged disability accrued a relevant work history that included the semi-skilled, sedentary jobs of billing clerk and skip tracer. R. 30, 653, 853.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 731-48. Plaintiff then requested a hearing before an ALJ, R. 749, and the ALJ held a hearing on October 21, 2016. R. 613-62. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Adger Brown, Jr., a Vocational Expert. Id. The ALJ offered to postpone the hearing based on his concern about Plaintiff's visible confusion, but after taking a break to confer with counsel, Plaintiff opted to continue with the proceedings. R. 624-25; see also R. 934 (declining supplemental hearing). After adjournment, the ALJ notified the security guard and Plaintiff's counsel that Plaintiff was not to drive home because of the ALJ's concerns about Plaintiff's great difficulty standing and exiting the hearing room. R. 26. Emergency services were contacted, and responders thought Plaintiff's condition was related to medication intoxication. R. 26. Plaintiff was transported to the emergency room by ambulance, where her urine drug screen was positive for cocaine and benzodiazepine. R. 26, 80, 82. The emergency room doctor referred Plaintiff to another doctor for possible admission for drug overdose of benzodiazepine, but Plaintiff left the hospital against medical advice. R. 77, 84.

On January 27, 2017, the ALJ issued an unfavorable decision. R. 16-38. Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:[1]

1. The claimant has not engaged in substantial gainful activity since July 12, 2013, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, cervical degenerative disc disease with radiculopathy, left carpal tunnel syndrome, left shoulder degenerative joint disease and labral tear, major depressive disorder, post-traumatic stress disorder with panic disorder, and obesity. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[2] The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She is able to sit, stand, and walk for six hours in any eight-hour workday. She requires a cane for walking, but she is unable to walk on uneven terrain, and requires a sit/stand option while working at the workstation every 60 minutes. She can frequently use bilateral foot controls. She can frequently use her left upper extremities for hand controls. She can occasionally reach overhead

---

[1] The Court cites to the rules in place at the time the ALJ issued his decision in January 2017, although the Commissioner's Rules and Regulations were subsequently revised later in 2017. See 82 Fed. Reg. 15132-01 (Mar. 27, 2017).

[2] "Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

3

    with her left upper extremity. She [can] frequently climb stairs and stairs (sic).³ She can occasionally stoop, kneel, crouch, crawl, and balance. She is unable to climb ladders, ropes or scaffolds. She can have occasional exposure to hazards such as unprotected heights and moving mechanical parts. She can have frequent exposure to vibrations. She is able to perform simple, routine, repetitive tasks and simple work-related decisions, however, she is able to maintain concentration, persistence, and pace for periods of 2 hours, perform activities within a schedule, maintain regular attendance, and complete a normal workday and work week. She should not interact with the general-public and have only occasional close "team-type" interact[ion] with co-workers. She can tolerate occasional changes in a routine work setting. Thus, the claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including the three light, unskilled jobs of production tester, product tester and weigher, and grader/sorter. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from July 12, 2013, through January 27, 2017 (the date of the ALJ's decision). (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 21-32.

When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ failed to (1) properly weigh the opinion of a treating psychiatrist, and (2) failed to properly account for Plaintiff's inability to handle stress, her panic attacks, and her obesity in formulating the RFC. See doc. no. 11 ("Pl.'s Br."); doc. no. 13 ("Pl.'s Reply"). The Commissioner maintains the ALJ's decision is supported by substantial evidence and should therefore be affirmed. See doc. no. 12 ("Comm'r's Br.").

---

³Based on the hearing testimony, (R. 654), it appears this limitation should be frequently climbing ramps and stairs.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.   DISCUSSION

It is clear the case should be remanded to the Commissioner for further consideration because the ALJ did not properly address Plaintiff's obesity in formulating the RFC.

#### A.   Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work

6

pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

That is, an ALJ must consider all of a claimant's impairments, severe and non-severe, in combination. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (*per curiam*) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)); see also 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). As one of the Commissioner's policy interpretation rulings explains,

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996). That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant. Id.

### B. The ALJ Erred in Evaluating Plaintiff's Obesity in Formulating the RFC

As explained in SSR 02-1p, obesity is no longer a listed impairment, but it is still a medically determinable impairment to be considered when evaluating disability. SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002). SSR 02-1p also recognizes, "Obesity is a risk

7

factor that increases an individual's chances of developing impairments in most body systems.  It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body system." Id. at *3.  An ALJ should assess the effect that obesity has on exertional and postural functions, as well as "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. at *6.  "Obesity may also cause or contribute to mental impairments such as depression." Id. at *3.

SSR 02-1p also explains, "The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." Id. at *6.  Notably, SSR 02-1p requires an explanation "how [the Commissioner] reached [the] conclusion on whether obesity caused any physical or mental limitations." Id. at *7.

However, a mere diagnosis of obesity does not equate with a finding of disability. That is, disability hinges on the functional limitations attendant to diagnoses that would prevent an individual from working, not the mere existence of an impairment.  See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Lewis v. Comm'r Soc. Sec., 487 F. App'x 481, 483 (11th Cir. 2012) (*per curiam*); Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005) (*per curiam*); 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  Rather, the record must contain evidence demonstrating that Plaintiff's obesity affected her ability to work.

The National Institutes of Health Clinical Guidelines describe a Body Mass Index (BMI) above 30.0 as "obesity." SSR 02-1p at *2. These same Guidelines recognize three levels of obesity: Level I covers BMIs of 30.0-34.9; Level II covers BMIs of 35.0-39.9, and Level III - termed "extreme" and having the greatest risk for developing obesity-related impairments - covers BMIs greater than or equal to 40. Id. Although the three levels describe the extent of obesity, they "do not correlate with any specific degree of functional loss." Id.

There is no question Plaintiff consistently maintained a BMI above 30 following her alleged onset date, and indeed fell into the Level II and "extreme" Level III range. See, e.g., R. 1034 (Sept. 26, 2013, 5'2" tall, 239 pounds, BMI 43.7); R. 1017 (Feb. 26, 2014, 5'2" tall and 239 pounds, BMI 43.7); R. 1529 (Dec. 10, 2014, 5'2.5" tall and 208.6 pounds, BMI 37.5). On the date of the hearing, Plaintiff reported her weight at 204 to 206 pounds, putting her BMI on October 21, 2016 at 37.5. R. 626. The records from Plaintiff's trip to the emergency room after the administrative hearing show a past history and current assessment of multiple issues mentioned in SSR 02-1p, set forth above, as associated with obesity: obstructive sleep apnea, hypertension, obesity, and bipolar, anxiety, and mood disorders. R. 84, 85.

The ALJ recognized Plaintiff suffers from severe impairments related to musculoskeletal body systems, as well as mental disorders, and specifically delineated obesity as a severe impairment. R. 21. The ALJ also identified several other "non-severe" conditions, some of which are associated with obesity in SSR 02-1p, including: diabetes and hypertension. R. 22. Furthermore, the ALJ found Plaintiff needed a cane for walking, and was occasionally able to stoop, kneel, crouch, crawl, and balance. R. 18. Cardiovascular and musculoskeletal impairments are precisely the types of impairments likely to be complicated and affected by

obesity. SSR 02-1p, at *2. Similarly, the abilities noted as limited by the ALJ are the abilities likely to be limited further by obesity. SSR 02-1p, at *6. Additionally, the non-severe impairments identified by the ALJ - *e.g.*, diabetes, hypertension - are of the type the combined effects of which may be greater than might be expected without obesity. SSR 02-1p, at *6.

However, in formulating Plaintiff's RFC at step four, the ALJ omitted any discussion of Plaintiff's obesity. R. 24-30. While the ALJ mentioned his determination about "the effects of an individual's obesity," was guided by SSR 02-1p, and acknowledged the general Levels of BMI and that the combined effects of obesity with other impairments may be greater than considering impairments separately, he never gave any details concerning *Plaintiff* and *her* Level of obesity or potential impact on her impairments.

The ALJ's decision does not list Plaintiff's height and weight. Nor, for example, does the administrative decision show the ALJ gave consideration to Plaintiff's morbid obesity that reached nearly forty-four percent BMI, (R. 1518), when determining Plaintiff could frequently climb stairs and occasionally stoop, kneel, crouch, crawl, and balance, despite needing a cane to walk and having a laundry list of musculoskeletal impairments and other non-severe impairments. R. 24. In sum, there is no indication that the ALJ considered the effect of Plaintiff's obesity in combination with her other medically determinable impairments in formulating Plaintiff's RFC. See Phillips, 357 F.3d at 1238; Heatly, 382 F. App'x at 825; Early v. Astrue, 481 F. Supp. 2d. 1233, 1239-40 (N.D. Ala. 2007) (finding ALJ erred by failing to adequately consider claimant's obesity in combination with other impairments when determining her RFC).

The Commissioner argues the ALJ sufficiently addressed Plaintiff's obesity by identifying it as a severe impairment, including lifting restrictions, postural limitations, and the need for a cane in the RFC, and citing SSR 02-1p. Comm'r Br., p. 13. The Commissioner further argues the Eleventh Circuit does not require the "function-by-function assessment" of limitations requested by Plaintiff. Id. (citing Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 263 (11th Cir. 2009) and Freeman v. Barnhart, 220 F. App'x 957, 959-60 (11th Cir. 2007)). The Commissioner's general statement of the law is correct, but does not carry the day because that is not what Plaintiff argued. As summarized by Plaintiff:

> The Commissioner asserts Jones suggests that the ALJ should have made a function-by-function assessment of her limitations with respect to particular impairments. The Commissioner is wrong. Jones argued that the ALJ has to provide more than just *knowledge* of the [R]uling, but must also provide some rationale showing he actually applied the requirements of the Ruling to the facts of the case. The decision does not contain one statement regarding the effect of Jones's obesity on her other severe and non-severe impairments.

Pl.'s Reply, p. 7.

For example, in Castel, the Eleventh Circuit ruled the record reflected the ALJ considered the claimant's obesity, specifically noting where the ALJ acknowledged the claimant's height and weight. 355 F. App'x at 264 & n.7. There is no such acknowledgment in this case. Moreover, to the extent obesity might contribute to or exacerbate mental impairments, proper consideration of Plaintiff's obesity may impact the evaluation of mental limitations which Plaintiff contends were improperly excluded from consideration when the ALJ formulated the RFC. The Court does not suggest an ALJ must specifically discuss a claimant's obesity with particular language, or even specifically refer to every piece of evidence in the administrative decision. See Dyer v. Barnhart, 395 F.3d

11

1206, 1211 (11th Cir. 2005) (*per curiam*) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was *not* the case here, is not a broad rejection which is 'not enough to enable [the district court of this Court] to conclude that [the AJ] considered her medical condition as a whole.'") However, the ALJ was required to consider all of Plaintiff's impairments when determining her RFC, including her well-documented obesity, and explain his conclusions. See 20 CFR §§ 404.1520(e), 404.1545; SSR 96-8p, at *5; SSR 02-1p, at *7. This, the ALJ failed to do.

The Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered. Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"); see also Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability applications, but the Court cannot conclude that the decision as reported by the ALJ is supported by substantial evidence. As such, remand is warranted.

The Court need not reach Plaintiff's remaining contentions. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.") Of course, should the

District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 28th day of January, 2019, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA